IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WINONA BRITTING                                                  PLAINTIFF

v.                  Civil No. 11-2070

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                     DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Winona Britting, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

The plaintiff filed her application for DIB on March 20, 2008, alleging an onset date of September 10, 2004, due to diabetes, peripheral neuropathy, arthritis, and migraine headaches. Tr. 117, 142-143, 164, 201, 210, 216, 222. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 97, 101. An administrative hearing was held on July 2, 2009. Tr. 43-77. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 53 years old and possessed a high school education. Tr. 47-48, 49, 90, 117, 171. Plaintiff had also complete three years of college, two of which were at a business school, but she did not obtain a degree. Tr. 49, 171. She had past relevant work "(PRW)" experience as a telephone operator, proofreading clerk, and data entry clerk. Tr. 50, 67, 90, 152-159, 165-166, 174-183, 219, 224.

On January 20, 2010, the ALJ found plaintiff's diabetes mellitus, obesity, depression, and arthritis to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 prior to December 31, 2009, her date last insured. Tr. 85-86. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work involving only frequent fingering. Tr. 86-90. Further, the ALJ concluded Plaintiff could perform work where the complexity of the tasks is learned by experience with several variables, the tasks require judgment within limits, and the supervision required is little for routine, but detailed for non-routine tasks. He also found Plaintiff to be capable of responding appropriately to supervisors, co-workers, the general public, and usual work situations. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a sales clerk, file clerk, and general office clerk. Tr. 91.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 18, 2011. Tr. 1-5. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 12, 13.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work

3

experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

In the present case, Plaintiff submitted two additional pieces of medical evidence to the Appeals Council for review. The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. *See Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (citing *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances, we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Cunningham*, 222 F.3d at 500 (citing *Nelson*, 966 F.2d at 366).

Here, Plaintiff submitted a functional capacity evaluation ("FCE") completed by Velvet Barrows, a physical therapist, and a Mental Evaluation conducted by psychologist Dr. Patricia Walz. Tr. 392-419. Each of these assessments shed further light on Plaintiff's ability to perform work-related activities.

On March 2, 2010, Ms. Barrows, a licensed physical therapist completed a functional capacity evaluation ("FCE") of Plaintiff. Tr. 392-394. Print outs of the computerized test results were included with her report. Ms. Barrows indicated that Plaintiff could sit for 30 minutes at a

4

time for a total of 6 hours per day, stand for 15 minutes at a time for a total of 1 hour per day, and walk for 5 minutes at a time for a total of 1 hour per day. Ms. Barrows indicated that it was recommended that Plaintiff use an assistive device to stand and walk, and that she would need rest breaks at hourly intervals or less. Further, testing revealed Plaintiff could occasionally lift and carry up to ten pounds, rarely lift 11-25 pounds, and never lift over 25 pounds. Ms. Barrows also indicated Plaintiff would be limited in the use of her lower extremities and would need to elevate her legs while seated. Further, she revealed that Plaintiff could frequently finger and perform fine manipulation with both hands; occasionally reach, balance, and climb stairs; rarely push/pull, work in extended position, work above shoulder level, work over head, bend, or twist; and, never, squat, crawl, stoop, crouch, kneel, and climb ladders/ramps/scaffolds. Ms. Barrows indicated that Plaintiff would have marked limitations with regard to working near hazardous conditions, unprotected heights, dangerous moving machinery, and exposure to extremes and sudden or frequent changes in temperature or humidity and moderate limitations with regard to driving/riding in automotive equipment. Ms. Barrows noted that Plaintiff became fatigued approximately two hours into the FCE, and she allowed her to lie down for 10 minutes. She also indicated that the objective bases for her conclusions were as follows: monitor heart rate for increase with work effort, compare dynamic and static functions, test several reps, note distracted movement patterns, tested her sensation and noted objective findings regarding her neuropathy, and administration of a grip test which was valid for good effort. Tr. 392-394. Additional objective evidence included her own personal observations. Tr. 395-407. Plaintiff's feet were cold to the touch and purple in color. She could not toe walk or heel walk secondary to pain. Tr. 395-407.

We note that the record before the ALJ does not contain an RFC assessment prepared by an examining source. Tr. 361-368, 372-375. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.

5

1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Thus, Ms. Barrows assessment is the only first-hand report of Plaintiff's physical limitations. Additionally, her assessment seems to be in line with the fingering and standing limitations imposed by Nurse Pham and Dr. Frisbie during Plaintiff's disability physical. Tr. 353-357. These limitations appear to have been ignored by the ALJ, who determined Plaintiff could frequently finger and placed no limitations on her ability to stand.

On February 27, 2010, Plaintiff was evaluated by Dr. Patricia Walz. Tr. 408-415. Dr. Walz's assessment indicates that she was privy to and reviewed all of Plaintiff's medical records. Plaintiff stated that she originally applied for disability due to the neuropathy in her feet, but that she was now seeking disability due to her diabetes. She also indicated that one doctor had told her he thought she had fibromyalgia, but Plaintiff was of the opinion it was just her neuropathy. Plaintiff described her health as fair. At the current time, her diabetes was well controlled via a combination of diabetic diet and medication. However, Plaintiff reported continued problems with neuropathy in her hands, feet, and bladder. She also complained of a vision related impairment caused by an infection that resulted in the development of scar tissue on her retina. From a mental perspective, Plaintiff did report some difficulties with depression and, although she admitted to having suicidal ideations in the past, denied any current ideations or plan. She indicated that she did not feel she could ever kill herself, as that would be "the last sin." Plaintiff also admitted to fluctuations in her mood, but stated that Effexor prevented her from experiencing extreme mood swings. No recent alcohol or drug abuse issues were acknowledged.

Dr. Walz noted that Plaintiff was cooperative with a depressed mood, flat affect, clear and intelligible speech, and logical and goal oriented thought processes. The Beck Depression

Inventory test was administered and Plaintiff scored in the mildly depressed range. Her Minnesota Multiphasic Personality Inventory score was suggestive of possible conversion symptoms. Dr. Walz noted that individuals with similar scores tended to experience and express psychological problems in terms of physiological symptoms, but this was not to say that their physical complaints were "all in their heads." She stated that these individuals are just more vulnerable to developing stress related illnesses or many have true conversion symptoms with no physical base. Dr. Walz diagnosed Plaintiff with bipolar II disorder, conversion pain disorder, and a history of alcohol dependence in long-term sustained remission. She then assessed Plaintiff with a GAF of 40-45 based on recent suicidal thoughts. Dr. Walz indicated that Plaintiff's social skills were adequate, her speech was clear and intelligible, her intellectual functioning was thought to be in the average range, her attention and concentration were adequate although she reported some problems at home, her persistence was well, and the speed of her information processing was average. There was no evidence of malingering, and Dr. Walz was of the opinion Plaintiff would be able to manage her funds without assistance. Tr. 408-415.

Dr. Walz also completed a mental RFC assessment, concluding that Plaintiff had extreme difficulties with regard to completing a normal workday without interruptions from psychologically based or pain related symptoms, completing a normal workweek, and demonstrating reliability. She found Plaintiff to have marked limitations in the areas of performing activities within a schedule, maintaining regular attendance, performing at a consistent pace, performing without an unreasonable number or length of rest periods, and avoiding undue constriction of interests. Moderate limitations were noted with regard to Plaintiff's ability to deal with work stress, remember and carry out detailed or complex instructions, maintain attention or concentration for extended periods of time, behave in an emotionally stable manner, deal with the general public,

7

and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Dr. Walz estimated that Plaintiff's condition had remained at substantially the same level of severity since approximately 2004. Tr. 416-419.

We also recognize that Dr. Walz's mental RFC is the only mental RFC assessment of record completed by an examining source. *See id*. Further, her assessment is somewhat bolstered by the evaluation of Dr. Kathleen Kralik. Dr. Kralik diagnosed Plaintiff with sleep disorder reportedly due to medication side effects; pain disorder associated with both psychological factors and a general medical condition; depressive disorder not otherwise specified; and, nicotine dependence. She also indicated that Plaintiff's ability to carry out activities of daily living and daily adaptive functioning was somewhat impaired for occupational purposes (due to her perceptions of pain and drowsiness); ability to attend and sustain concentration on basic tasks was intermittently problematic; capacity to sustain persistence in completing tasks seemed problematic (due to her falling asleep and need for frequent breaks associated with her perception of pain); and, capacity to complete work-like tasks within an acceptable time frame seemed variable. Tr. 326-331. However, the ALJ found Plaintiff's only severe mental impairment to be depression. We believe Dr. Walz's assessment provides additional support for a diagnosis of pain disorder/conversion pain disorder, which requires further exploration.

Accordingly, after considering all of the evidence currently before this Court, the undersigned concludes that substantial evidence does not support the ALJ's RFC determination. Remand is necessary to allow the ALJ to review the evidence submitted to the Appeals Council and to reassess Plaintiff's severe impairments and the work-related limitations resulting therefrom.

On remand, the ALJ is further directed to request a physical RFC assessment from Dr. Schmitz, Plaintiff's treating doctor, documenting Plaintiff's relevant physical and mental diagnoses

and resulting limitations. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record).

## IV. Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of April 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)